# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| ASSYRIAN BABYLON, LLC, | No. 0:11-bk-34059-JMM |
| Debtor. | **MEMORANDUM DECISION** |

Before the court is the Debtor's request to confirm its Plan of Reorganization (ECF No. 97). Appearances were noted on the record, and evidence was taken, some by documents, some by declaration and some by oral testimony.

The matter, taken under advisement, is now ripe for a ruling.

### JURISDICTION

This presents a core matter over which this court has jurisdiction. 28 U.S.C. § 157(b)(2)(L).

### FACTS

#### A. In General

The Debtor is a sports bar in Yuma Arizona. Previously, it operated from leased premises at 2852 W. Highway 95, and was known as "Rumors Sports Bar and Grill." In

November, 2010, a fire broke out in the bar, rendering a portion thereof uninhabitable or damaged (Disclosure Statement at 2.1, ECF No. 97). Thereafter, the Debtor was required to surrender the premises by order of this court (ECF No. 86). The Debtor vacated the premises on or about June 6, 2012.

The major assets of the Debtor consist entirely of personalty or general intangibles. Of the $53,055 in value listed for such items in the Debtor's schedules, the liquor license is valued at $30,000, while the remainder of the assets is made up, in the main, of equipment and liquor inventory (Schedule B, ECF No. 12).

The principal creditors of the Debtor are Majid Jajo, Rasha MJ LLC and Four Brothers Success, LLC ("Jajo"), which filed a secured claim for $262,724.47. Jajo asserts a lien on the Debtor's personalty, including the liquor license.

The only other claims filed are for taxes, by both the state and federal governments, which total $26,825.38.

According to the Debtor's schedules, unsecured undisputed trade claims (which are not required to file proofs of claim) total $19,317.89 (Schedule F, ECF No. 12). Of that amount, $15,123.32 is owed to Carol A. Filby, the enterprise's owner and 100% shareholder (see question 21, ECF No. 15).

### B. The Progress of the Bankruptcy Case

From mid-December, 2011, until June, 2012, the case proceeded routinely, yet with rocky patches. The early, simmering cauldron of legal problems in this matter had to do with the Jajo efforts to oust the Debtor from the leased premises, and the Debtor's efforts to stay there but not pay rent due to a remodel/repair dispute. On June 6, 2012 (ECF Nos. 86, 88), this court ordered the Debtor to vacate the landlord's premises, due to non-payment of rent. The stay was lifted for that purpose. Thus, since June, 2012, the Debtor has had no physical location from which to operate its bar.

On August 2, 2012, the Debtor filed a Plan and Disclosure State (see ECF Nos. 97, 112, 117, 120, 124) and the Debtor's Plan was moved forward to a contested confirmation hearing, held on November 14, 2012 (ECF No. 97). Efforts by Jajo, in the interim, to gain stay relief, in order to foreclose on collateral, were denied by the court, pending the confirmation hearing (see ECF Nos. 60, 108).

Prior to confirmation, the Debtor obtained stipulations for the treatment of the tax-related claims of the State of Arizona (ECF Nos. 127, 129, 137, 146). This left only the opposition of Jajo to be addressed at confirmation (ECF No. 132). That opposition turned on feasibility grounds, as well as an argument that the Plan violated the absolute priority rule.

## **C. The Plan**

Because the Debtor has been forced to leave its prior business establishment, it essentially comes to this court as a new start-up business, albeit with bar-related assets and managerial experience. The challenge is to evaluate the feasibility of an enterprise, which must begin again in a new location.

The Debtor's Plan divides its creditors into seven different classes, and provides differing treatment for each class. In a nutshell, the Plan's contents can be summarized as follows:

| **Class** | **Type** | **Amount** | **Treatment** | **Impaired** |
|---|---|---|---|---|
| 1 | Administrative | $50,000 | Paid in full at confirmation or later, by agreement | No |
| 2 | Employees | None | Paid in full at confirmation | N/A |
| 3 | Taxes / Governmental Claims | $10,150.25 ADOR/Sales $913.33 DES $8,301.07 IRS/Payroll | Paid in regular instalments, with interest, over 5 years | Yes |
| 4 | Personal Property Tax Claims-- Yuma County | None Known | Paid in full within 30 days of coming due | N/A |

| | | | |
|---|---|---|---|
| 5 | Jajo (Secured) | $88,055 | Paid over 60 months, with 4.5% interest, in monthly instalments of $1,641.61; retain lien | Yes |
| 6 | Yuma Supreme Auto Sales | $3,000 | Paid over Plan term at original interest rate | Yes |
| 7 | General Unsecured Trade | $178,862[1] | $100 per month for 60 months; pro-rated | Yes |

Prior to the confirmation hearing, the Debtor filed a Ballot Report (ECF No. 143). It noted that its creditors had voted as follows:

| **Class** | **Type** | **Vote** |
|---|---|---|
| 1 | Administrative | Accepted (but not applicable because not a voting class) |
| 2 | Employee Priority Claims | None, therefore, not applicable |
| 3 | Taxes / Governmental Claims | Accept |
| 4 | Personal Property Tax Claims--Yuma County | None, therefore not applicable |
| 5 | Jajo (Secured) | Reject |
| 6 | Yuma Supreme Auto Sales (Secured) | Accept |
| 7 | General Unsecured Trade | Reject |

Thus, the two impaired consenting classes were the taxing entities, and the single creditor whose $3,000 claim was secured by an automobile.

### D. The Business Begins to Struggle to Get Back on Its Feet

On September 13, 2012, responding to Jajo's criticism that the Debtor needed to find a location, obtain new capital and gain an approved location transfer for its liquor license, the Debtor filed a supplemental Disclosure State (ECF No. 112). It noted:

---

[1] General trade (non-insider) $4,194; Jajo $174,668.

- It finalized a new lease for 4340 E. 32nd Street;
- It was in the process of obtaining liquor license approvals; and
- An investor, Robert Neufeld, was willing to infuse $30,000 into the enterprise.

Until this court confirms its Plan, the Debtor cannot open for business. Thus, the central question, necessary to decide this case, is whether the Debtor's Plan can work and is feasible. That part of the case (feasibility) will be discussed in the legal portion of this Memorandum Decision, which discusses § 1129(a)(11).

## **THE LAW**

### **A. Sections 1129(a)(1) and (2)--General Compliance**

#### **1. In General**

These sections require that the Plan and Plan proponent (here, the Debtor) have complied with applicable bankruptcy law. This means that the law has been followed throughout the administrative portion of the case, appropriate fees and reports have been tendered, that the court and creditors have been privy to, or have not been denied access to financial information, that in all respects a debtor has been transparent and candid in its communications, and that it has materially complied with the substantive bankruptcy statutes and rules.

Here, the administrative record supports the finding that these elements have been met. All necessary professionals in the cases have been appointed by the court, fees for those professionals have been or will be disclosed and vetted, and procedures for noticing out the Debtor's Plan with adequate disclosure (§ 1125) have been followed. There has been no assertion that the vote solicitation process has been tainted or is otherwise improper. Therefore, it appears that, in general, these provisions of the Bankruptcy Code have been satisfactorily met.

5

Case 0:11-bk-34059-BMW    Doc 148    Filed 12/03/12    Entered 12/03/12 13:20:10    Desc
Main Document - Disclosure Statement    Page 5 of 14

The court FINDS and CONCLUDES that the Debtor has satisfied §§ 1129(a)(1) and (a)(2) of the Code.

### B. Section 1129(a)(3)--Good Faith

Good faith is an inherent requirement which runs throughout the entire Bankruptcy Code. Because the bankruptcy court is a court of equity, as well as a court of law, and because of the fluidity of bankruptcy proceedings, equity demands a constant balancing of the competing needs of the various constituencies. It is essential that bankruptcy proceedings be transparent, candid and always operate in that spirit.

In its most basic sense, "good faith" means honesty in purpose, faithfulness to one's duty or obligation, observance of concepts of fair dealing, and the absence of intent to defraud or to seek unconscionable advantage. BLACK'S LAW DICTIONARY (9th ed. 2009). The bankruptcy definition most commonly applied is that the good faith, that is needed to confirm a plan of reorganization, requires the plan to achieve a result consistent with the objectives and purposes of the Bankruptcy Code. In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002) (citing In re Corey, 892 F.2d 829, 835 (9th Cir.1989)); In re Stolrow's, Inc., 84 B.R. 167, 172 (9th Cir. BAP 1988); In re Jorgensen, 66 B.R. 104, 108-09 (9th Cir. BAP 1986). In order to determine good faith, a court must inquire into the totality of circumstances surrounding the plan, the application of the principal of fundamental fairness in dealing with creditors, and whether the plan itself will fairly achieve a result consistent with the objectives and purposes of the Code. Sylmar Plaza, 314 F.3d at 1074; Stolrow's, 84 B.R. at 172; Jorgensen, 66 B.R. at 109; see also In re Kemp, 134 B.R. 413, 414-15 (Bankr. E.D. Cal. 1991); In re Jasik, 727 F.2d 1379, 1383 (5th Cir. 1984).

This Chapter 11 case is progressing as it should, and the court FINDS that the Debtor has presented itself in the best possible light throughout.

The Debtor has satisfied this statutory requirement.

Case 0:11-bk-34059-BMW    Doc 148    Filed 12/03/12    Entered 12/03/12 13:20:10    Desc
Main Document - Disclosure Statement    Page 6 of 14

6

## C. Section 1129(a)(4)--Payments In Connection With the Case or Incident to the Case Must Be Approved and Reasonable

Typically, this Code section refers to the court's supervision over professional fees. To date, all professionals who are required to do so have applied to the court for fees, or will do so, and will circulate their requests to the primary constituents and the U.S. Trustee, and give parties the opportunity to object.

The court FINDS and CONCLUDES that § 1129(a)(4) has been met by the Plan and its proponent.

## D. Section 1129(a)(5)--Post-Confirmation Officers and Directors, Insiders and Compensation

A Chapter 11 plan may not be confirmed if the continuation in management of the persons proposed to serve as officers or managers of debtor is not in the interests of creditors and public policy. § 1129(a)(5)(A)(ii); see In re Beyond.com Corp., 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003) (citing In re Sovereign Group, 1984-21 Ltd., 88 B.R. 325, 329 (Bankr. D. Colo. 1988)). Indeed, continued service by prior management may be inconsistent with the interests of creditors and public policy if it directly or indirectly perpetuates incompetence, lack of discretion, inexperience or affiliations with groups inimical to the best interests of the debtor. Beyond.com, 289 B.R. at 145 (citing In re Polytherm Indus., Inc., 33 B.R. 823, 829 (W.D. Wis. 1983)); In re Sherwood Square Assocs., 107 B.R. 872, 878 (Bankr. D. Md. 1989); In re SM 104 Ltd., 160 B.R. 202, 245-46 (Bankr. S.D. Fla. 1993) (manager who diverted rents, violated court orders, made misrepresentations to secured creditors, commingled funds and maintained a grossly inadequate accounting system, was prohibited by § 1129(a)(5) from continuing in that capacity).

Case 0:11-bk-34059-BMW    Doc 148    Filed 12/03/12    Entered 12/03/12 13:20:10    Desc
Main Document - Disclosure Statement    Page 7 of 14

7

No affirmative evidence was brought forth, by the objecting party, from which the court might conclude that § 1129(a)(5)'s requirements were not met. Therefore, the court FINDS that the Debtor has satisfied its burden as to § 1129(a)(5).

### E.  Section 1129(a)(6)--Governmental Rate Control

This element of § 1129(a) is inapplicable to this Debtor.  No creditor or class raised an objection on this ground, and thus the court finds that § 1129(a)(6) does not apply.

### F.  Section 1129(a)(7)--Best Interests of Creditors Test

This section of § 1129(a) requires, with respect to each impaired class of claims or interests, that each holder of a claim or interest in the class either accept the plan or receive under the plan at least as much as it would receive on liquidation.  In re Mid Pac. Airlines, Inc., 110 B.R. 489, 491 (Bankr. D. Haw. 1990). This is commonly referred to as the "best interests of creditors test." In re M. Long Arabians, 103 B.R. 211, 216 (9th Cir. BAP 1989).

In its Disclosure Statement, the Debtor detailed its best estimation of how creditors would fare in a hypothetical liquidation.  For unsecured creditors, that estimated recovery was felt to be zero.  (ECF No. 97 at 23-24).

The Debtor has therefore sustained its burden of proof relative to § 1129(a)(7), and that element of § 1129 has been satisfied.

### G.  Section 1129(a)(8)--Each Class Must Accept or is Left Unimpaired

This provision of the Code is the counterpart of §§ 1129(a)(10) and 1129(b).  If each class accepts or is left unimpaired, this provision is satisfied.  If one or more classes dissent and reject the plan, then the debtor must have at least one other impaired class which consents to the

8

Case 0:11-bk-34059-BMW    Doc 148    Filed 12/03/12    Entered 12/03/12 13:20:10    Desc
Main Document - Disclosure Statement    Page 8 of 14

plan. § 1129(a)(10). Then, if all of the other § 1129(a) factors are satisfied, the case may proceed to the fair and equitable considerations of § 1129(b) (the "cramdown").

Here, the Debtor cannot satisfy § 1129(a)(8) because it does not have unanimous class consent for its Plan. Classes 5 and 7 have rejected the Plan.

But, since the Debtor has two impaired consenting classes (Classes 3 and 6), § 1129(a)(8) simply becomes inapplicable, and is replaced by § 1129(a)(10) and § 1129(b). (See, Ballot Report, ECF No. 143).

### H. Section 1129(a)(9)--Priorities

Parties which previously objected on this ground have now resolved their differences. The court finds this section to be satisfied.

### I. Section 1129(a)(10)--At Least One Impaired Consenting Class

As noted above, in the § 1129(a)(8) discussion, the Debtor has cleared this statutory hurdle, because it has two impaired classes, not including "insiders," which have voted in favor of the Plan. (ECF No. 143).

Section 1129(a)(10) has been satisfied.

### J. Section 1129(a)(12)--Fees

The U.S. Trustee has not objected on the grounds that its fees, or related fees, are unpaid. No creditor has suggested that compliance with this section has not been met.

The court therefore FINDS AND CONCLUDES that this provision of the Code has been satisfied.

Case 0:11-bk-34059-BMW   Doc 148   Filed 12/03/12   Entered 12/03/12 13:20:10   Desc
Main Document - Disclosure Statement    Page 9 of 14

9

## K. Section 1129(a)(13)--Retiree Benefits

This section is not applicable to this Debtor.

## L. Section 1129(a)(14)--Domestic Support Obligations (Alimony; Child Support)

This section is not applicable to this Debtor.

## M. Section 1129(a)(15)--Individual Chapter 11 Case

This section is not applicable to this Debtor.

## N. Section 1129(a)(16)--Transfers of Property

The Plan does not intend to transfer any of the Debtor's assets. Therefore, this section does not apply.

## O. Section 1129(a)(11)--Feasibility

Left for last is the feasibility test of the Code. Feasibility is the heart of every Chapter 11 reorganization case. It is the most important element of § 1129(a). Section 1129(a)(11) permits confirmation only if:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

"The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can

Case 0:11-bk-34059-BMW  Doc 148  Filed 12/03/12  Entered 12/03/12 13:20:10  Desc
Main Document - Disclosure Statement    Page 10 of 14

10

possibly attain after confirmation." In re Pizza of Haw., Inc., 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11], at 1129-34 (15th ed. 1984)).

"A plan meets this feasibility standard if the plan offers a reasonable prospect of success and is workable. . . .The prospect of financial uncertainty does not defeat plan confirmation on feasibility grounds since a guarantee of the future is not required. . . . The mere potential for failure of the plan is insufficient to disprove feasibility." In re Patrician St. Joseph Partners Ltd. P'ship, 169 B.R. 669, 674 (D. Ariz. 1994).

Every debtor is required to present "ample evidence to demonstrate that the Plan has a reasonable probability of success." In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir. 1986); see also 7 COLLIER ON BANKRUPTCY ¶ 1129.02[11], at 1129-52, (16th ed. 2012). Section 1129(a)(11) "requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." Id. at 1129-53 (citation omitted). In order to determine whether § 1129(a)(11) is satisfied, a court must "scrutinize the plan to determine whether it offers a reasonable prospect of success and is workable." In re Sagewood Manor Assocs. Ltd. P'ship, 223 B.R. 756, 762 (Bankr. D. Nev. 1998). Plans which are based on speculation are not proper candidates for reorganization. Pizza of Haw., supra.

In evaluating the feasibility of a plan, the Ninth Circuit's BAP has directed courts to consider several factors, including: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. In re Wiersma, 324 B.R. 92, 113 (9th Cir. BAP 2005), aff'd in part and rev'd in part on other grounds, 483 F.3d 933 (9th Cir. 2007).

The odd part of the instant case is that there exists no operating history of the Debtor at the new location to which it intends to relocate. And, as one of the expert witnesses, Mr. Donald Hulke, noted, the capital required in order to optimize the chances for success of this venture is extremely thin.

On the other hand, there are factors which lean toward making this a confirmable plan. While the initial capital structure may be marginal, and the outlook for success at a new location is challenging, we are dealing with a fairly small business that has successfully operated in the past. Until the fire occurred at its previous location, there was no evidence presented to suggest that management was unprofessional or incompetent, or that it had significant financial problems. Thus, there is an apparent record of success for the entity.

While the court understands the arguments made by Jajo, it nonetheless can conclude, on the record before it, and considering the differences between the feasibility opinions of the experts, that the Debtor has met its burden of proof on feasibility.

Jajo worries about the future status of its collateral. However, no evidence was presented to show that either the liquor license or the equipment would diminish in value, at least over the near term of the Plan's operation, or will exceed in depreciation what the Debtor proposes to pay each month. Jajo's principal argument is that the Debtor can survive with a different classification of liquor license, and that it does not need a No. 6. But that is not the Debtor's Plan. This court can only evaluate the Plan which is before it. And that Plan is feasible as written.

Although legitimate differences of opinion exist over the thin amount of new capital being infused, and recognizing that, while more may be better, less is not fatal to feasibility. The Debtor has met its burden to show that the Plan is feasible.

The Debtor proved 11 U.S.C. § 1129(a)(11).

## **SECTION 1129(b)--THE CRAMDOWN PROVISIONS**

If a debtor is able to prove each of the applicable elements of § 1129(a), as this Debtor has now done, it then must run the gauntlet of § 1129(b), commonly known as "cramdown." What the Code attempts to do in this section is to have the court analyze, for each rejecting and dissenting class, whether the plan treats them "fairly" and "equitably," and does not unfairly discriminate against them. If a secured class objects, their treatment under the plan must pass

12

Case 0:11-bk-34059-BMW    Doc 148    Filed 12/03/12    Entered 12/03/12 13:20:10    Desc
Main Document - Disclosure Statement    Page 12 of 14

through the fire of § 1129(b)(2)(A). For an unsecured class, the applicable Code section is § 1129(b)(2)(B).

If a debtor cannot satisfy the cramdown elements, contained in § 1129(b), then a plan cannot be confirmed.

In order for cramdown to be implemented, and the Plan confirmed over a class' vote against it, the Debtor must show that the Plan does not unfairly discriminate against these dissenters, and that their treatment is "fair and equitable." These latter terms have defined meanings, and in this case, require that their lien interests remain in place, and if payments are deferred and paid over a term, that those payments have appropriate "value." This "value" is generally accepted as being a market interest rate on the secured portion.

### 1. The Jajo Secured Claim--Class 5

The treatment of the Jajo secured claim is set forth in Class 5. The Debtor estimates the value of the Jajo collateral, which it intends to retain and use, to be $88,055. The balance of the $262,724.47 claim is unsecured. The unsecured portion equals $174,668, and is treated as a Class 7 creditor.

For the secured portion, the Debtor's value of $88,055 has not been challenged. The Debtor proposes to allow Jajo to retain its secured collateralized position in this amount, and to pay it, with interest at 4.5% per annum, over 60 months, at $1,641.61 per month. This will pay Jajo, over the five-year term of the Plan, $98,496,60.

The court FINDS AND CONCLUDES that this treatment is "fair and equitable" and thus satisfies 11 U.S.C. § 1129(b)(2)(A)(i).

Case 0:11-bk-34059-BMW    Doc 148    Filed 12/03/12    Entered 12/03/12 13:20:10    Desc
Main Document - Disclosure Statement    Page 13 of 14

13

## 2. The Unsecured Creditors--Class 7

Jajo has raised a class issue for all of the unsecured creditors in Class 7, which is the application of the "absolute priority" rule. But for the $30,000 new cash infusion, this argument would prevail, and prevent confirmation. But Jajo has presented no evidence that this sum is so inadequate as to prevent confirmation.

As the Debtor points out, the "exception" to the rule has been met (see ECF No. 140 at 21). The $30,000 contribution, for this small, closely-held business, is enough to satisfy the necessary requirements to meet the absolute priority rule's exception. 11 U.S.C. § 1129(b)(2)(B)(ii); In re Brotby, 303 B.R. 177 (9th Cir. BAP 2003); Case v. Los Angeles Lumber Products Co., 308 U.S. 106 (1939).

The Jajo objection on this ground will be OVERRULED.

## CONCLUSION

Based on the entire record in this case, the court FINDS AND CONCLUDES that Debtor's Plan may be confirmed.

Counsel for the Debtor shall present an appropriate form of order within 15 days (attaching a grid or matrix as to the final iteration of class treatment).

DATED AND SIGNED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:

Attorney for Debtor
Ronald Meyer, Attorney for Majid Jajo, Rasha, MJ, LLC and Four Brothers Success LLC
Office of the U.S. Trustee